Filed 1/28/26  P. v. Rodriguez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERTO RODRIGUEZ,<br><br>    Defendant and Appellant. | F088502<br><br>(Super. Ct. No. LF009916D)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez, and Jesica Gonzales, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Peña, J. and DeSantos, J.

## INTRODUCTION

In 2014, appellant and defendant Roberto Rodriguez (appellant) and two codefendants were convicted after a joint jury trial of attempted voluntary manslaughter with a gang enhancement, active participation in a criminal street gang, and other offenses. Appellant was sentenced to 18 years eight months in prison. Aside from ordering corrections to the abstract of judgment, the judgment was affirmed on direct appeal.

In 2024, the trial court recalled appellant's sentence pursuant to Penal Code[1] section 1172.75 because two now-invalid prior prison term enhancements were imposed as part of his aggregate sentence. Appellant moved for the court to impose lower terms for the determinate sentences but did not address the gang conviction and enhancements. The court dismissed the prior prison term enhancements, reduced his sentence to 16 years eight months, and did not grant appellant's motion to further reduce his sentence.

On appeal from the resentencing hearing, appellant argues the trial court should have dismissed his conviction in count 4 for active participation in a criminal street gang (§ 186.22, subd. (a)), and the gang enhancements (§ 186.22, subd. (b)) found true as to three felony counts, because of the ameliorative impact of amendments to section 186.22 enacted by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333). The People agree.

We agree Assembly Bill 333's amendments to section 186.22 are retroactive and should have been addressed when appellant's sentence was recalled. As a result of those amendments, we reverse appellant's conviction in count 4 for active participation in a criminal street gang, vacate the gang enhancements found true as to three felony

---

[1] All further statutory citations are to the Penal Code.

convictions, and remand for the People to determine whether to retry appellant on the gang allegations pursuant to the amended version of section 186.22.

## FACTS[2]

### Incident at Gas Station

"At around 7:00 p.m. on March 9, 2014, brothers German and Elbardo, along with their cousin, Jamie, drove to a gas station and attached convenience store in Lamont, a small community outside of Bakersfield .…  German and Elbardo lived in Arvin, a town about seven miles away from Lamont, and Jamie lived in Weedpatch, a small community bordering Lamont.  German was aware that Jamie was affiliated with the Weedpatch street gang.  At the time of the incident, Jamie was wearing a white T-shirt and blue pants.

"They parked at a gas pump, and Elbardo and Jamie exited the vehicle and went in the attached convenience store as German stayed in the back seat of the vehicle.  While in the store, Elbardo noticed two Hispanic males standing outside of the store, one wearing a white shirt and the other a checkered shirt.

"After about five minutes, Elbardo and Jamie emerged from the store and German saw two males approach them from a grey or brown sport utility vehicle (SUV).  One of the individuals said something to a third person, who was driving the SUV, and then proceeded to shake hands with Jamie.  The male then hit Jamie, who fell to the ground.

---

[2]     This court granted appellant's request to take judicial notice of the record and nonpublished opinion in his direct appeal, *People v. Catalan, et al.* (Aug. 20, 2018, F070809) (*Catalan*), from which the following facts of the charged offenses are taken.

As in the direct appeal, we refer to the two codefendants and certain victims by their first names to avoid confusion because of common last names; no disrespect is intended.  (*Catalan*, *supra*, F070809.)

We note that in the direct appeal, this court's opinion summarized the lengthy gang evidence introduced at the joint jury trial as relevant to the parties' claims of error pursuant to the prior version of section 186.22.  (*Catalan*, *supra*, F070809.)  We decline to repeat that evidence given our reversal and remand for the People to decide whether to retry appellant on the gang allegations under the current provisions of section 186.22.

3.

Both men proceeded to kick Jamie while he was on the ground. Elbardo grabbed and pushed one of the individuals away from Jamie, and German exited the vehicle. The other individual, the one who originally shook Jamie's hand, was still kicking Jamie in the face. German punched that individual in the face three times, and he fell to the ground. Jamie then got up and ran off behind the store.[3]

"After Jamie had been knocked to the ground, Elbardo noticed two additional men wearing white shirts approach the scene. One of these individuals punched Elbardo in his face.

"German next remembered getting hit in the head and falling to the ground, but did not see who hit him. German was hit several times while he was on the ground, but was eventually able to get back up and went back into the vehicle. He attempted to call 911 on his phone, but was having difficulty concentrating. While German was sitting in the vehicle, an individual opened a different door, searched the car, and took Elbardo's cell phone and charger from the console. German was unable to tell if the individual was one of the two men that had originally approached Elbardo and Jamie. German then went into the store and was taken by ambulance to the hospital.

"Elbardo saw the individuals get back in the SUV and drive south. He then noticed that German had been stabbed several times in the chest.

"Sheriff's Deputy Justin Fernandez arrived at the scene and observed German's injuries. German had a stab wound to his head and several to his abdomen. German had puncture-type stab wounds under his right nipple and on his right side.

"German was treated at the hospital for two lacerations to his liver, two cuts to his diaphragm and some abdominal bleeding. The surgeon opined that German's injuries

---

**3**     "Jamie did not voluntarily testify at trial, and only appeared after he was taken into custody for failure to appear. He denied being a member of a gang. He admitted that he shook hands with someone, but stated that he did not look at the individual's face." (*Catalan*, *supra*, F070809.)

4.

were potentially life threatening and he was hospitalized for 10 days." (*Catalan*, *supra*, F070809.)

## Identification of Defendants

"Law enforcement placed a request for location information regarding Elbardo's stolen cell phone with the phone company. The company provided geographic coordinates of the cell phone, which coincided with a residential address in Lamont.[4]

"Deputy Tovar was one of the first law enforcement officers to arrive at the residence indicated from the cell phone signal. Tovar encountered [defendant] Edy in the backyard. Tovar was also able to see into the house and observed several males and females inside. Upon entering, Tovar contacted [codefendant] Daniel, [appellant], [codefendant Dennis] Ruth, and three other males, Juan H., Richard P. and a 14-year-old male juvenile.

"Later, Tovar transported Elbardo to the residence. When they pulled up, Elbardo recognized the SUV parked in front of the residence as the vehicle from the gas station. Tovar read Elbardo an admonition stating that the individuals being shown may or may not be the individuals that had committed the crime. Elbardo sat in the back of a patrol vehicle as he was shown six or seven individuals (the male juvenile was not included).

"The individuals were led out one at a time in handcuffs near the vehicle that Elbardo had just identified. Elbardo identified [codefendants] Edy, Daniel and Ruth in the showup as being involved in the incident. However, Elbardo did not identify [appellant], Juan H. or Richard P. as being present at the gas station." (*Catalan*, *supra*, F070809.)

## Search of Residence and SUV

---

**4**     "The cell phone location data was only used to explain the conduct of law enforcement in investigating that residence. The prosecution did not present evidence that a cell phone was ever recovered during the investigation." (*Catalan*, *supra*, F070809.)

"Sheriff's deputies conducted a search of the house and SUV.  During the search of the residence, they found two knives, but were unable to find Elbardo's phone.  The search also revealed a grey T-shirt with blood splatter on it.  The two knives from the residence and grey and black shirts were taken for testing.

"A search of the SUV revealed a baseball bat and blood spatter on the door to the rear passenger seat.  The mother of [appellant]'s son owned the SUV.  She admitted that the baseball bat was hers, and that she had left it in the back of the SUV for several months.  She had told … Tovar that [appellant] had taken the vehicle for several hours that day and was in possession of the keys." (*Catalan*, *supra*, F070809.)

**Forensic Testing**

"An evidence technician searched the SUV and collected prints along with a baseball bat from the SUV's rear compartment.  Examination of fingerprints lifted from the SUV matched those of Daniel and [appellant].  The technician also swabbed the blood spatter from the door of the vehicle.  One of the knives tested positive for the DNA of [appellant].

"A forensic laboratory technician testified regarding DNA testing of the knives and shirts.  The technician was unable to find any evidence of bloodstains on either of the knives found at the residence.

"DNA testing of the [grey] shirt found at the residence revealed positive matches as to Daniel and Edy.  DNA on the black T-shirt matched Daniel.  A swabbing of the front neck of the same T-shirt also matched Daniel, however, while it did not provide a match to German, his DNA could not be excluded from the sample.  The true allele DNA testing program required an accuracy level of greater than one in 10,000 persons to ensure against false positives.[5]

---

**5**   "The level of identification of most samples in this investigation [was] much more accurate than one in 10,000.  For example, the random match probability for Daniel's

6.

"With regard to this sample from the black shirt, the possibility of selecting a random, untested person from a population that would have the same DNA profile was [one] in 917 African-Americans, [one] in 921 Caucasians[,] and [one] in 600 Hispanic individuals. Due to the much lower level of accuracy of the DNA testing, German's DNA could not be excluded, and the result was considered to be inconclusive. However, if German's DNA was on the shirt, it was not in the form of visible bloodstains.

"[Appellant]'s DNA matched that found on the bat found in the back of the SUV. The passenger door handle of the SUV matched DNA to Daniel." (*Catalan*, *supra*, F070809.)

## PROCEDURAL BACKGROUND

On April 3, 2014, an information was filed in the Superior Court of Kern County charging appellant and codefendants Daniel, Edy, and Ruth with count 1, premeditated attempted murder of German (§§ 664/187, subd. (a)); count 2, assault with a deadly weapon on German (§ 245, subd. (a)(1)); count 3, assault by means of force likely to produce great bodily injury on Jamie (§ 245, subd. (a)(4)); count 4, active participation in a criminal street gang (§ 186.22, subd. (a)); and count 5, robbery of Elbardo (§ 212.5, subd. (c)), with personal use, great bodily injury, and (except for count 4) gang enhancements.

**Verdicts**

A joint jury trial was held for appellant and codefendants Daniel, Edy, and Ruth.

On October 28, 2014, the jury was unable to reach verdicts on any of the charges against codefendant Ruth. (*Catalan*, *supra*, F070809.)

The jury found appellant and codefendants Daniel and Edy not guilty of count 1, premeditated attempted murder, but guilty of the lesser included offense of attempted voluntary manslaughter (§§ 664/192, subd. (a)), with enhancements that they committed

DNA on the grey shirt was one in 48 billion Hispanic persons and one in in 87 billion for Edy." (*Catalan*, *supra*, F070809.)

the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), personally inflicted great bodily injury (§ 12022.7, subd. (a)), and personally used a deadly or dangerous weapon, a knife, in the commission of the offense (§ 12022, subd. (b)(1)).

The jury also found appellant and codefendants Daniel and Edy guilty of count 2, assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)), with the gang and great bodily injury enhancements; count 4, active participation in a criminal street gang (§ 186.22, subd. (a)), with the personal use enhancement true and the great bodily injury enhancement not true; and count 5, second degree robbery (§ 212.5, subd. (c)), with the gang enhancement true, and the personal use and great bodily injury enhancements not true.

The jury found appellant and codefendants Daniel and Edy were not guilty of count 3, felony assault by means of force likely to produce great bodily injury, but guilty of the lesser included offense of misdemeanor assault (§ 240); the jury did not return findings on the enhancements alleged as to count 3.

The trial court found appellant had two prior prison term enhancements.

## Sentencing

On December 16, 2014, the trial court sentenced appellant to 18 years eight months in prison, based on the midterm of three years for count 5, plus 10 years for the gang enhancement; and consecutive terms of one year for count 1, plus one year eight months for the gang enhancement and one year for the great bodily injury enhancement (one-third the midterms), with the personal use enhancement stricken; and two years for the prior prison term enhancements. The court stayed the terms imposed for the other convictions and enhancements pursuant to section 654. As to misdemeanor count 3, the court imposed 180 days with credit for time served.

Codefendant Edy was sentenced to 17 years eight months, and codefendant Daniel was sentenced to 15 years eight months. Codefendant Ruth later pleaded to lesser charges. (*Catalan*, *supra*, F070809.)

**Direct Appeal**

In 2018, this court filed the nonpublished opinion in the joint direct appeal filed by appellant and codefendants Daniel and Edy. We rejected their claims of evidentiary and instructional errors, ordered the trial court to amend and correct the abstracts of judgment, and affirmed the judgments as corrected. (*Catalan*, *supra*, F070809.)

**Section 1172.6 Petition**

In 2022, appellant filed a petition for recall and resentencing of his conviction for attempted voluntary manslaughter pursuant to section 1172.6.

On June 16, 2023, after briefing and a hearing, the trial court denied appellant's petition and found he was statutorily ineligible for resentencing because attempted voluntary manslaughter was not an enumerated offense eligible for recall under section 1172.6.

## SECTION 1172.75 RECALL AND RESENTENCING

In 2023, the trial court was advised that appellant was eligible for recall and resentencing pursuant to section 1172.75, because his sentence included two section 667.5, subdivision (b) prior prison term enhancements that were now invalid. A supplemental probation report was filed that recommended the court strike the two one-year terms imposed for those enhancements, and conduct a resentencing hearing to address any other ameliorative sentencing changes applicable to his aggregate sentence.

On July 30, 2024, appellant filed a resentencing statement and argued the trial court should consider the mitigating circumstances of his good behavior in prison at the resentencing hearing, and reduce his aggregate sentence to 15 years eight months. Appellant did not address Assembly Bill 333, or the gang conviction and enhancements.

On August 14, 2024, the trial court recalled appellant's sentence and conducted the resentencing hearing. The court recognized that it had discretion to resentence appellant pursuant to subsequently enacted ameliorative sentencing provisions.

The trial court dismissed the two one-year terms imposed for the prior prison term enhancements, and declined to further reduce his sentence. The court resentenced him to 16 years eight months in prison, again based on the midterm of three years on count 5, plus 10 years for the gang enhancement; and consecutive terms of one year for count 1, plus one year eight months for the gang enhancement and one year for the great bodily injury enhancement (one-third the midterms); and stayed the sentences for the remaining counts and allegations.

On August 15, 2024, appellant filed a timely notice of appeal from the trial court's resentencing on August 15, 2024.

### DISCUSSION

On appeal, both appellant and the People acknowledge that at the resentencing hearing, the trial court and the parties did not address Assembly Bill 333's amendments to section 186.22, which were enacted and became effective after his trial, and whether those amendments affected his conviction in count 4 for active participation in a criminal street gang and the gang enhancements found true for his felony convictions in counts 1, 2, and 5.

Appellant asserts the matter must be remanded for a new resentencing hearing because the trial court committed error in not addressing the amendments to section 186.22, since the legislation changed the elements required to prove both the gang conviction under subdivision (a) and the gang enhancement under subdivision (b). In the alternative, appellant asserts defense counsel was prejudicially ineffective for failing to raise these issues at the resentencing hearing.

The People agree that Assembly Bill 333's amendments to section 186.22 are retroactive and became applicable to appellant's case once his sentence was recalled, and

10.

the trial court should have considered these provisions at the resentencing hearing. The People agree remand is required to allow the prosecution to retry appellant on count 4, active participation in a criminal street gang, and the gang enhancements found true as to counts 1, 2, and 5.

We review the amendments enacted by Assembly Bill 333 and agree with the parties.

## A.  Section 1172.75

The trial court recalled and resentenced appellant pursuant to the provisions of section 1172.75, which provides that a prior prison term enhancement pursuant to section 667.5, subdivision (b) imposed prior to January 1, 2020 is invalid, except for an enhancement imposed for a prior conviction for a sexually violent offense. (§ 1172.75, subd. (a).)

At a section 1172.75 resentencing hearing, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

## B.  Amendments to Section 186.22

Assembly Bill 333 was enacted in 2021 and became effective on January 1, 2022. (*People v. Burgos* (2024) 16 Cal.5th 1, 7 (*Burgos*); *People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207 (*Tran*).)

Assembly Bill 333 added " 'new elements to the substantive [gang] offense and [gang] enhancements in section 186.22—for example, by requiring proof that gang members "collectively engage" in a pattern of criminal gang activity, that the predicate offenses were committed by gang members, that the predicate offenses benefitted the gang, and that the predicate and underlying offenses provided more than a reputational benefit to the gang.…' [Citations.] These changes ha[d] the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the

11.

enhancement.' " (*Tran*, *supra*, 13 Cal.5th at p. 1207; *Burgos*, *supra*, 16 Cal.5th at p. 9; *People v. Clark* (2024) 15 Cal.5th 743, 749.)

Assembly Bill 333's amendments to section 186.22 are ameliorative and retroactive to all cases not final as of the legislation's effective date pursuant to the rule of *In re Estrada* (1965) 63 Cal.2d 740. (*Tran*, *supra*, 13 Cal.5th at pp. 1206–1207; *Burgos*, *supra*, 16 Cal.5th at p. 25.) When a defendant's sentence is recalled, the amended version of section 186.22 is applicable at the section 1172.75 resentencing hearing. (*People v. Lopez* (2025) 17 Cal.5th 388, 395–396; *People v. Salgado* (2022) 82 Cal.App.5th 376, 380–381; *People v. Sek* (2022) 74 Cal.App.5th 664, 667 (*Sek*).)

## C. Enactment of Section 1109

In addition to amending section 186.22, Assembly Bill 333 separately enacted a new statute, section 1109. Section 1109, subdivision (a) states that if requested by the defense, "a case in which a gang enhancement is charged under subdivision (b) or (d) of [s]ection 186.22 shall be tried in separate phases," so that the question "of the defendant's guilt of the underlying offense shall be first determined." If the defendant is found guilty of the underlying offense and there is an allegation of an enhancement under section 186.22, subdivisions (b) or (d), "there shall be further proceedings to the trier of fact on the question of the truth of the enhancement. Allegations that the underlying offense was committed for the benefit of, at the direction of, or in association with, a criminal street gang and that the underlying offense was committed with the specific intent to promote, further, or assist in criminal conduct by gang members shall be proved by direct or circumstantial evidence."

Section 1109, subdivision (b) states that if the defendant is charged with the gang substantive offense in violation of section 186.22, subdivision (a), "this count shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. This charge may be tried in the same proceeding with an allegation of an enhancement under subdivision (b) or (d) of [s]ection 186.22."

Section 1109's bifurcation provisions are not retroactive to cases that have already been tried, even if appeals were pending and cases were not final at the time that section 1109 went into effect. (*Burgos*, *supra*, 16 Cal.5th at p. 8.) "[T]he *Estrada* inference of retroactivity does not extend to section 1109. *Estrada*'s principle of statutory interpretation infers retroactivity from statutory reductions in punishment, not from the type of prophylactic rules of criminal procedure embodied in section 1109's bifurcation provisions. Accordingly, the general presumption of prospective-only application applies to section 1109. The equal protection clauses of the federal and state Constitutions [citations] do not compel a different result." (*Burgos*, *supra*, 16 Cal.5th at pp. 8, 29–30, 31.)

In so holding, *Burgos* noted that "in some instances, the same gang evidence introduced to establish the elements of a gang enhancement might be admissible at a bifurcated trial on the underlying charge." (*Burgos*, *supra*, 16 Cal.5th at p. 23.) "[G]ang evidence may still be admissible where relevant to the underlying charges." (*Id*. at p. 25, fn. 8.)

**D. Analysis**

Appellant was convicted after a jury trial in 2014, and the judgment was affirmed on appeal. Assembly Bill 333's amendments to section 186.22 subsequently became effective on January 1, 2022. (*Burgos*, *supra*, 16 Cal.5th 1, 7.) *Tran* was decided in 2022, and held Assembly Bill 333's amendments to section 186.22 were ameliorative and retroactive to all cases that were not final as of the legislation's effective date. (*Tran*, *supra*, 13 Cal.5th at pp. 1206–1207.) In addition, there were published authorities in 2022 that held the amended version of section 186.22 was applicable when a defendant's sentence was recalled for resentencing. (See, e.g., *People v. Salgado*, *supra*, 82 Cal.App.5th 376, 380–381; *Sek*, *supra*, 74 Cal.App.5th 664, 667.)

In 2024, the trial court recalled appellant's sentence pursuant to the provisions of section 1172.75, after it was informed that his aggregate sentence included prior prison

term enhancements that were now invalid. At the resentencing hearing, the court recognized it had discretion to fully resentence appellant on all aspects of his sentence subject to subsequently enacted ameliorative legislation. The court dismissed the enhancements and declined to further reduce his sentence.

The trial court and both parties failed to realize that Assembly Bill 333's amendments to section 186.22 were ameliorative, retroactive, and applicable to appellant's case once his sentence was recalled.

The appropriate remedy is to reverse appellant's conviction in count 4 for active participation in a criminal street gang (§ 186.22, subd. (a)), vacate the jury's true findings on the gang enhancements found true as to counts 1, 2, and 5 (§ 186.22, subd. (b)), and remand the matter for the People to have the opportunity to retry these allegations pursuant to the provisions of section 186.22 as amended by Assembly Bill 333. (*People v. Clark*, *supra*, 15 Cal.5th at pp. 763–764; *Sek*, *supra*, 74 Cal.App.5th at p. 669.) In doing so, we note the bifurcation provisions in section 1109, also as enacted by Assembly Bill 333, are not retroactive and only prospective, as explained in *Burgos*.[6]

## DISPOSITION

Appellant's conviction in count 4 for active participation in a criminal street gang (§ 186.22, subd. (a)) is reversed, and the jury's true findings on the gang enhancements attached to counts 1, 2, and 5 (§ 186.22, subd. (b)) are vacated.

The matter is remanded for further appropriate proceedings. The People may elect to retry the gang allegations in the information pursuant to the requirements of section 186.22 as amended by Assembly Bill 333. If the People elect not to retry the gang allegations, appellant shall be resentenced. In all other respects, the judgment is affirmed.

---

[6] Given the parties' agreement about remand, we need not address appellant's alternative claim that defense counsel was prejudicially ineffective for failing to raise Assembly Bill 333 at the resentencing hearing.

14.